**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

FLINT WOOD; PHONESAGNAM
SILIVONGXAY; CYNTHIA
ROBERTS; FLISHA MUMAW, on
behalf of themselves and all
others similarly situated,
            *Plaintiffs-Appellants*,

v.

SYLVIA MATHEWS BURWELL,
Secretary of the United States
Department of Health and
Human Services,
            *Defendant-Appellee.*

No. 14-15356

D.C. No.
3:12-cv-08098-DGC

OPINION

Appeal from the United States District Court
for the District of Arizona
David G. Campbell, District Judge, Presiding

Argued and Submitted March 17, 2016
San Francisco, California

Filed September 14, 2016

Before: M. Margaret McKeown, Kim McLane Wardlaw,
and Richard C. Tallman, Circuit Judges.

Opinion by Judge McKeown

## SUMMARY*

### Equal Access to Justice Act

The panel reversed the district court's denial of plaintiffs' motion for attorneys' fees under the Equal Access to Justice Act ("EAJA"); held that plaintiffs, who were members of a class action suit against the Secretary of the Department of Health and Human Services, were entitled to "prevailing party" status; and remanded to the district court to consider whether the government's position was "substantially justified" under EAJA.

Plaintiffs were recipients of health coverage under an Arizona Medicaid demonstration project, and they challenged the Secretary's approval of a new Arizona 2011–2016 demonstration project.

The panel applied the factors set out in *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604-05 (2001), and held that plaintiffs were the "prevailing parties" for the purpose of attorneys' fees under EAJA. The panel held that the dispositive question was not whether the plaintiffs ultimately obtained some form of substantive relief, but rather whether there was a lasting alteration in the *legal* relationship of the parties. The panel concluded that there was a material alteration in the legal relationship of the parties, to the benefit of plaintiffs. The panel further held that although a district court's decision to remand without vacatur might weigh against awarding

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

prevailing party status in some cases, it did not do so in this case, and the district court's retention of jurisdiction for practical and equitable reasons did not undermine the reality that plaintiffs were a prevailing party.

## COUNSEL

Richard Rothschild (argued), Western Center on Law and Poverty, Los Angeles, California; Jane Perkins, National Health Law Program, Carrboro, North Carolina; Ellen Sue Katz, William E. Morris Institute for Justice; Phoenix, Arizona; for Plaintiffs-Appellants.

Sushma Soni (argued) and Michael Jay Singer, Attorneys, Appellate Staff; John S. Leonardo, United States Attorney; Civil Division, United States Department of Justice, Washington, D.C.; for Defendant-Appellee.

## OPINION

McKEOWN, Circuit Judge:

This appeal is the latest in a decade-long conflict over the cost of copayments and medication for low-income Arizonans who qualify for a state Medicaid demonstration project covering childless adults. The sole issue is whether the members of a class action suit against the Secretary of the Department of Health and Human Services ("DHHS" or the "Secretary") were the "prevailing part[ies]" for purposes of attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.

In many ways, this case reads like a classic victory for the class (the "Wood plaintiffs"): The district court found that the Secretary acted in a manner that was arbitrary and capricious—in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A)—by approving the project without considering the class members' evidence and objections. The court remanded the case to the agency for a new decision consistent with its legal obligations and the Secretary complied. *See Wood v. Betlach*, 922 F. Supp. 2d 836 (D. Ariz. 2013). After reconsideration, the Secretary again approved the demonstration project, and the district court then granted summary judgment in her favor. However, during the remand the district court retained jurisdiction and did not vacate the demonstration project. Following the remand, the district court found that the Wood plaintiffs were not entitled to attorneys' fees because, after the case returned from the agency, the plaintiffs did not prevail on their substantive claims.

We disagree. Applying the factors set out in *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604–05 (2001), we hold that under the EAJA, the Wood plaintiffs are the "prevailing party" in their procedural APA challenge against the Secretary.

## BACKGROUND

This appeal arises out of substantive and procedural challenges to the Secretary's approval of an Arizona Medicaid demonstration project. In 2012, the Wood plaintiffs, who were recipients of health coverage under that project, filed suit against the Secretary. The complaint challenged her approval of a new Arizona project that raised copayments for medical visits and medications and that

permitted healthcare providers to refuse non-emergency services based on an inability to pay.

Under the Medicaid Act, a "demonstration project" allows the Secretary to waive certain Medicaid requirements for state projects that are "likely to assist in promoting the objectives of" the Medicaid Act. 42 U.S.C. § 1315(a). Demonstration projects may cover populations that would not otherwise be eligible under the state Medicaid plan, but for whom the state can receive federal reimbursement. In approving a project, the Secretary must examine: (1) whether the project is an experimental, pilot, or demonstration project; (2) whether it is likely to assist in promoting the objectives of the Medicaid Act; and (3) the "extent and period" necessary for the project. *Newton–Nations v. Betlach*, 660 F.3d 370, 380 (9th Cir. 2011) (citing *Beno v. Shalala*, 30 F.3d 1057, 1071 (9th Cir. 1994)). Cost-saving is not a sufficient ground for approving a demonstration project. *Id.* at 381 (citing *Beno*, 30 F.3d at 1069).

In 2000, Arizona voters opted to expand the state Medicaid program to cover low-income childless adults who would not otherwise be eligible for Medicaid. Arizona applied to DHHS to create a project for eligible adults to receive health services with nominal copayments. Under this plan, healthcare providers could not refuse services because of an inability to pay. DHHS approved the demonstration project in 2001.

With DHHS approval, Arizona modified the program in 2003 to include higher copays (the "Copayment Rule") and to permit healthcare providers to refuse services for inability to pay. A group of affected individuals filed suit in federal court challenging the modified program. *See*

*Newton–Nations v. Rodgers*, No. CV-03-2506-PHX-EHC, 2010 WL 1266827, at \*2–\*7 (D. Ariz. Mar. 29, 2010) (summarizing the procedural history). On appeal, we determined that the Secretary's approval of the Copayment Rule violated the APA: "There is little, if any, evidence that the Secretary considered the factors § 1315 requires her to consider before granting Arizona's waiver. Thus, the Secretary's decision was arbitrary and capricious within the meaning of the APA insofar as it entirely failed to consider an important aspect of the problem." *Newton–Nations*, 660 F.3d at 381–82 (internal quotation marks omitted).

When the first demonstration project expired in 2011, Arizona sought approval for a new demonstration project, which also included the Copayment Rule. DHHS approved the new project through 2016, although the Copayment Rule expired in 2013. At around the same time that the new project was approved, we remanded the *Newton–Nations* case to the district court with an order to vacate and remand to the Secretary for further consideration. 660 F.3d at 383. On remand, the district court dismissed the case as moot because of the intervening 2011–2016 demonstration project, a dismissal that we affirmed on appeal. *Newton–Nations v. Betlach*, 569 F. App'x 525, 526 (9th Cir. 2014). The *Newton–Nations* plaintiffs were awarded attorneys' fees under the EAJA. *Newton–Nations v. Betlach*, No. CV-03-02506-PHX-ROS, ECF No. 284, at 5 (D. Ariz. Aug. 22, 2014) (finding that the plaintiffs were the prevailing parties because "the Ninth Circuit concluded the Secretary violated the APA in connection with the increased copayments").

The Wood plaintiffs filed suit on essentially the same grounds as the *Newton–Nations* plaintiffs, but challenged the new 2011–2016 demonstration project. The complaint

alleged that the Secretary once again failed to review or analyze a number of issues related to the Copayment Rule, such as whether it was justified by any ground other than cost-saving. The plaintiffs sought declaratory and injunctive relief under the Due Process Clause of the Fourteenth Amendment, the APA, and the Social Security Act ("SSA"). They requested that the Secretary be enjoined from implementing the Copayment Rule, but did not specifically request a remand to the agency. The district court denied the Wood plaintiffs' motion for a preliminary injunction because the court determined that it could not enjoin the Copayment Rule without enjoining the entire demonstration project, a remedy that the plaintiffs did not seek.

In 2013, the district court partially granted the plaintiffs' motion for summary judgment and remanded for the Secretary to address the deficiencies in her approval of the 2011 demonstration project. According to the district court, the Secretary's approval of the new demonstration project was arbitrary and capricious in violation of the APA. Specifically, the Secretary had not considered the report of Dr. Ku, the Wood plaintiffs' expert. His report indicated that cost-sharing measures, like the Copayment Rule, had already been amply studied, such that there was minimal research or experimental value to the new project. The report further suggested that heightened costs for low-income individuals did not, in fact, reduce medical costs, but rather resulted in greater reliance on emergency care. The district court determined that "the record contains no evidence that the Secretary considered or responded to Plaintiffs' substantive objections during the administrative process," and that "the Secretary has not pointed to any expert opinion or evidence in the administrative record that refutes the objections put forth by Plaintiffs on the basis of Dr. Ku's research." *Wood*,

922 F. Supp. 2d at 847–48. The court ordered the Secretary to "address the deficiencies" set forth in the order and to complete a re-evaluation of the demonstration project within sixty days. *Id.* at 857.

The district court took a practical approach to the situation, reasoning that because the Copayment Rule was an integral component of the whole project, it would be impossible to vacate that rule without vacating the entire demonstration project. *Id.* at 851–52. Instead, the district court opted to retain jurisdiction, because

> [v]acating the entire demonstration project would . . . deny Plaintiffs and the class the very health benefits they claim to require. A remand of the Secretary's decision without vacating the project is the clearly preferable alternative and comports with Ninth Circuit precedent holding that agency action in violation of the APA can be left in place during remand 'when equity demands.'

*Id.* (quoting *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1395 (9th Cir. 1995)).

Upon remand and reconsideration, the Secretary came to the same conclusion as before and approved the 2011–2016 demonstration project in a letter dated April 8, 2013. Reasoning that in the letter "[t]he Secretary explained her rationale for disagreeing with the substance of [the Wood plaintiffs'] evidence" and "was not required to do more," the court granted the Secretary's motion for summary judgment. *Wood v. Betlach*, No. CV-12-08098-PCT-DGC, 2013 WL 3871414, at *7 (D. Ariz. July 26, 2013).

The district court later denied the Wood plaintiffs' motion for attorneys' fees under the EAJA on the ground that they were not the "prevailing party." In its order, the district court noted that the plaintiffs cited "seemingly dispositive cases" holding that remand to an agency can give rise to prevailing party status. The court also acknowledged that "[t]he interim success obtained by Plaintiffs rested on a premise that was not later rejected by the Court." However, the district court noted that the "dispositive" Ninth Circuit cases pre-dated the Supreme Court's decision in *Sole v. Wyner*, 551 U.S. 74 (2007), which the district court interpreted as foreclosing prevailing party status for a party that obtained only interim relief.

## ANALYSIS

As the Supreme Court recently reiterated, "[b]efore deciding whether an award of attorney's fees is appropriate . . . a court must determine whether the party seeking fees has prevailed in the litigation." *CRST Van Expedited, Inc. v. EEOC*, 136 S. Ct. 1642, 1646 (2016). The Court went on to note that: "Congress has included the term 'prevailing party' in various fee-shifting statutes, and it has been the Court's approach to interpret the term in a consistent manner." *Id.* A fee-seeking party must show that (1) there has been a material alteration in the legal relationship of the parties and (2) it was judicially sanctioned. *See Buckhannon*, 532 U.S. at 604–05; *Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027, 1030 (9th Cir. 2009) (applying the *Buckhannon* factors to the EAJA).

The Wood plaintiffs present the classic hallmarks of a prevailing party. They alleged that the government acted improperly in not following prescribed administrative review;

the district court agreed and ordered the agency to conform its behavior to the law; and the Secretary complied. Nevertheless, the government points to two factors that it contends alter the prevailing party analysis: (1) the Wood plaintiffs obtained procedural relief, but not the substantive relief they sought; and (2) the district court remanded to the agency without vacatur, while retaining jurisdiction. We disagree with the government's claim that this "procedural posture made all the difference." Because the posture of this case did not fundamentally affect the prevailing party inquiry set out in *Buckhannon*, we conclude that the district court erred as a matter of law in holding that the Wood plaintiffs were not a prevailing party.

## I.  Judicially-Sanctioned Material Alteration

The district court determined that the Secretary's initial authorization violated the APA and compelled her to reconsider the evidence. Even though the Secretary later re-approved the demonstration project (including the Copayment Rule), she was obliged to consider the Wood plaintiffs' objections and evidence, which she failed to do during the first authorization. This posture resulted in a judicially-sanctioned material alteration in the parties' relationship because "the defendants were required to do something directly benefitting the plaintiff[ ] that they otherwise would not have had to do." *Carbonell v. INS*, 429 F.3d 894, 900 (9th Cir. 2005) (alteration in original) (citations omitted) (internal quotation marks omitted).

Procedural remedies can constitute a material alteration in the parties' legal relationship. *See, e.g.*, *Or. Nat. Res. Council v. Marsh*, 52 F.3d 1485, 1492 (9th Cir. 1995), *as amended on denial of reh'g* (June 29, 1995) (awarding

prevailing party status to plaintiffs where the agency had failed to "include an analysis of cumulative impacts" in its Environmental Impact Statement as required by law); *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 964–65 (D.C. Cir. 2004) (awarding attorneys' fees under the EAJA where the court "ordered the Secretary of the Army to correct procedural errors" and enjoined agency action while procedural errors were addressed). We have consistently held, both before and after the Supreme Court's 2007 decision in *Sole*, that when remand is based on a legal defect in the agency's decision, the remand order can be sufficient to confer prevailing party status. *See Tobeler v. Colvin*, 749 F.3d 830, 833–34 (9th Cir. 2014) (stating that remand to consider evidence that the agency had improperly ignored was sufficient to award attorneys' fees); *Li v. Keisler*, 505 F.3d 913, 917–18 (9th Cir. 2007) ("remand orders . . . advanced the goals sought by petitioners, and constituted material alterations of the parties' legal relationships"); *Rueda–Menicucci v. INS*, 132 F.3d 493, 495 (9th Cir. 1997) (awarding prevailing party status based on an agency remand).

*Sole* did not alter the landscape with respect to agency remands. In *Sole*, the Supreme Court considered whether a party that obtained a preliminary injunction, which was later dissolved by a final order denying relief, was a "prevailing party" under the EAJA. 551 U.S. at 82–83. The Court observed that "[a] plaintiff who achieves a transient victory at the threshold of an action can gain no award under that fee-shifting provision if, at the end of the litigation, her initial success is undone and she leaves the courthouse emptyhanded." *Id.* at 78. Unlike Wyner, the plaintiff in *Sole* who ultimately left the courthouse with a ruling that vitiated the legal ground upon which her injunction claim was based,

*id.* at 80–81, the Wood plaintiffs left the courthouse with an order that the Secretary violated the APA and had to undertake a "do over" of her administrative review—a victory that can hardly be described as leaving "emptyhanded."

Remand to an agency based on an APA procedural violation differs markedly from a transitory preliminary injunction. In *Sole*, the Court observed that the hearing prior to the grant of a preliminary injunction was "hasty and abbreviated" and that "[a]t the summary judgment stage, with the benefit of a fuller record, the District Court recognized that its initial assessment was incorrect." *Id.* at 84–85. The initial determination that Wyner had demonstrated a likelihood of success on the merits was "tentative" and "rested on a premise the District Court ultimately rejected." *Id.* The Court's reference to the "transient" nature of the preliminary ruling comports with the view that a preliminary injunction is, "by its very nature, intended to be temporary." *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 716 (9th Cir. 2013). In contrast, in a procedural challenge under the APA, part and parcel of the relief sought is agency adherence to administrative procedures, apart from any substantive relief.

The district court's reliance on the procedural versus substantive remedy dichotomy misreads *Sole*. The dispositive question is not whether the plaintiff ultimately obtained some form of substantive relief, but rather whether there is a lasting alteration in the *legal* relationship between the parties. The preliminary ruling in *Sole* granting the injunction, which included an assessment of the substantive merits, was both "incorrect" and "undone." 551 U.S. at 85, 78. In this case, the district court's remand order finding the Secretary's actions arbitrary and capricious under the APA

was not "reversed, dissolved, or otherwise undone" by its later summary judgment order. *Id.* at 83. Quite the opposite, the district court noted that the remand order requiring re-evaluation by the Secretary "rested on a premise that was *not* later rejected by the Court." (Emphasis added); c*f. id.* Whatever the Secretary's ultimate decision, she was compelled to authorize the demonstration project in a manner that conformed to the APA.

The result does not change simply because the complaint did not specifically seek remand for agency reconsideration of the demonstration project as a whole. By challenging the process by which the Secretary approved the demonstration project, the Wood plaintiffs essentially sought the remedy of a remand. *See Newton–Nations*, 660 F.3d at 382 (remanding for reconsideration based on a nearly identical claim to that of the Wood plaintiffs). When assessing whether there has been a material alteration in the legal relationship of the parties, the order must grant "relief that the would-be prevailing party sought," *Klamath*, 589 F.3d at 1030, but the relief need not be of "precisely the same character as the relief sought in the complaint" so long as it "serves the goals of the claim" and "require[s] defendants to do something they otherwise would not have been required to do." *Saint John's Organic Farm v. Gem Cty. Mosquito Abatement Dist.*, 574 F.3d 1054, 1059 (9th Cir. 2009). Although the district court found that the Copayment Rule was not severable from the rest of the demonstration project and thus equity precluded the Wood plaintiffs' preferred form of relief (i.e., vacating the Copayment Rule), this ruling did not undermine the relief granted in the remand order. We conclude that there was a material alteration in the legal relationship of the parties, to the benefit of the Wood plaintiffs.

## II. Remand Without Vacatur and Retention of Jurisdiction

We have not previously addressed whether remand without vacatur affects the prevailing party analysis set out in *Buckhannon*. This gap is unsurprising given that remand without vacatur is a remedy used sparingly in this circuit. *See Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015) ("We order remand without vacatur only in 'limited circumstances.'" (citations omitted)). The government argues that because the district court retained jurisdiction during the remand, prevailing party status is benchmarked against the post-remand grant of summary judgment in favor of the defendants. We disagree. Although a district court's decision to remand without vacatur might weigh against awarding prevailing party status in some cases, it does not do so here.

The district court's rationale for declining to vacate the demonstration project supports the Wood plaintiffs' victory. The court retained jurisdiction during the remand to allow the demonstration project to continue uninterrupted. It found that "remand of the Secretary's decision without vacating the project is the clearly preferable alternative and comports with Ninth Circuit precedent holding that agency action in violation of the APA can be left in place during remand 'when equity demands.'" *Wood*, 922 F. Supp. 2d at 851–52 (quoting *Idaho Farm Bureau*, 58 F.3d at 1395). This approach is consistent with the factors courts weigh when deciding whether to remand to an agency without vacatur: (1) "how serious the agency's errors are" and (2) "'the disruptive consequences of an interim change that may itself be changed.'" *Cal. Cmtys. Against Toxics v. EPA.*, 688 F.3d 989, 992 (9th Cir. 2012) (quoting *Allied–Signal, Inc. v. U.S.*

*Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993)).

The district court rested its decision on the second factor—"disruptive consequences"—because vacating the demonstration project would be prejudicial and deny ongoing benefits to the very individuals who sought procedural relief through agency reconsideration.

Contrary to the government's characterization, the remand did not "simply provide[] the opportunity for the Secretary to provide further information about the rationale for her approval decision prior to the court rendering a decision on the merits." Instead, the district court found that the agency violated the APA and ordered the Secretary to "address the deficiencies set forth in th[e] order," not just provide further information. *Wood*, 922 F. Supp. 2d at 857. The remand was based upon agency error, and the district court's retention of jurisdiction was a by-product of its desire to maintain the demonstration projection for equitable reasons. *Cf. Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Engr's*, 781 F.3d 1271, 1289 (11th Cir. 2015) (deciding not to vacate the agency's decision during remand in part because the court was "unable to discern whether that error truly is significant" or if the agency's "ultimate conclusion" was unlawful).

The Wood plaintiffs' prevailing party status should not be denied simply because the district court chose to protect this vulnerable class by allowing the Medicaid program to

continue uninterrupted.[1]   To hold otherwise would put plaintiffs in the untenable position of foregoing procedural relief or losing medical coverage, compounded by the possible forfeiture of a claim for attorneys' fees.  Likewise, it would force district courts to choose between exercising their equitable power to retain jurisdiction during an agency remand and maintaining plaintiffs' potential eligibility for attorneys' fees.  We see no reason to impose such a Hobson's choice on litigants or on the court.

The government urges that a Social Security remand provides an analogous context to support its position and to benchmark the circumstances of the Wood plaintiffs.  To the contrary, the Social Security analogy supports our holding that the Wood plaintiffs were the prevailing party.  Although we need not rely on the Social Security comparison for our rationale, we address it because this point was one of the government's central arguments on appeal.

---

[1] We decline to adopt the Federal Circuit's prevailing party analysis, which requires the district court to relinquish jurisdiction unless the party ultimately succeeds on the merits.  *See Former Emps. of Motorola Ceramic Prods. v. United States*, 336 F.3d 1360, 1366 (Fed. Cir. 2003); *see also Dover v. McDonald*, 818 F.3d 1316, 1320 (Fed. Cir. 2016) (granting attorney's fees where the district court did not retain jurisdiction, remanded to the agency, and ordered further agency proceedings); *Thompson v. Shinseki*, 682 F.3d 1377, 1381 (Fed. Cir. 2012) ("[W]here the plaintiff secures a remand requiring further agency proceedings because of alleged error by the agency, the plaintiff qualifies as a prevailing party . . . without regard to the outcome of the agency proceedings where there has been no retention of jurisdiction by the court." (alterations in original) (citation omitted) (internal quotation marks omitted)).  In cases where, as here, the retention of jurisdiction flows from an equitable remand without vacatur, such a rule does not comport with the purpose of the EAJA or with the district court's equitable authority to decline to vacate an illegal agency action during remand.

Sentence four and sentence six of 42 U.S.C. § 405(g) of the Social Security Act delineate the exclusive avenues for remand following judicial review of a decision by the Commissioner of Social Security. *See Shalala v. Schaefer*, 509 U.S. 292, 296 (1993). Under sentence four, the court can remand "a judgment affirming, modifying, or reversing the decision of the Commissioner," while a sentence six remand arises from a "motion of the Commissioner of Social Security" or "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record." 42 U.S.C. § 405(g).

In *Schaefer*, the Supreme Court distinguished between situations that give rise to a sentence four remand versus a sentence six remand, stating that, regardless of whether the claimant is ultimately awarded benefits, "a party who wins a sentence-four remand order is a prevailing party." 509 U.S. at 300–02. However, based on the specific statutory language of § 405(g), courts are not permitted to retain jurisdiction during a sentence four remand. *Id.* at 297.

The government suggests that because the district court retained jurisdiction here, the proper analogy is to a sentence six remand, where the party can only be "prevailing" if it ultimately obtains substantive relief. In focusing exclusively on the retention of jurisdiction, the government misses a key difference between sentences four and six, which is critical for the purposes of analogy to the EAJA. The distinction turns on the reason for the remand. In *Flores v. Shalala*, we applied the *Schaefer* principle that a claimant becomes a prevailing party after a sentence four remand regardless of whether there was an ultimate award of benefits. 49 F.3d 562, 568–69 (9th Cir. 1995), *as amended on denial of reh'g*

(June 5, 1995).  Distinguishing between the two kinds of Social Security remand, we explained:

> The district court reversed the Secretary's decision because the Secretary incorrectly failed to consider all the evidence . . . . The remand here was *not* a sentence-six remand . . . [which] may be issued only in two situations: 'where the Secretary requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency.'

*Id.* at 569 (citation omitted).  In *Rueda–Menicucci*, we extended this reasoning to BIA remands, because both BIA remands and sentence four remands result in a final judgment that the agency's actions did not comply with the law, such that  "we can perceive no difference between a 'sentence four' remand under § 405(g) and a remand to the BIA for further proceedings."  132 F.3d at 495.

This case does not fit into the sentence six box.  Instead, to the extent it is instructive, a sentence four remand provides a closer analogy to the current case:  the Wood suit was remanded because of the Secretary's failure to comply with the APA—in effect reversing the decision for failure to follow mandated procedures—not because of intervening facts or on a motion by the agency.[2]

---

[2] Our reasoning does not change in light of this court's recent opinion in *Ibrahim v. United States Department of Homeland Security*, —F.3d—, 2016 WL 4527560 (9th Cir. 2016).  There, we held that a district court should make a holistic "single inquiry" as to whether the government's

In sum, the retention of jurisdiction for practical and equitable reasons did not undermine the reality that the Wood plaintiffs were a prevailing party. The remand was not interim relief, but rather represented success on the APA challenge.

## CONCLUSION

The Wood plaintiffs are entitled to prevailing party status with respect to the February 6, 2013 order remanding the approval of the Medicaid demonstration project to the Secretary. We remand to the district court to consider whether the government's position was "substantially justified" under the EAJA. *Thangaraja v. Gonzales*, 428 F.3d 870, 874–76 (9th Cir. 2005).

**REVERSED AND REMANDED.**

---

conduct was "substantially justified" under the EAJA instead of making "discrete" findings regarding the government's positions at specific stages of litigation. We also noted there that this court has not extended beyond the Social Security context the rule in *Corbin v. Apfel*, 149 F.3d 1051, 1053 (9th Cir. 1998), that the district court may consider at the remand stage whether the government's position was substantially justified for purposes of the EAJA. *See Ibrahim*, at *5–6 (discussing *Corbin*). In contrast, this case examines the prevailing party determination, not the distinct inquiry into substantial justification as in *Ibrahim*. In *Ibrahim*, there was no possibility that Ibrahim could be considered a prevailing party prior to the ultimate resolution of her claims. But here the Wood plaintiffs prevailed on their claim that the Secretary violated APA procedures, a question that is not dependent on the ultimate success of their substantive claims. Therefore, because this case does not address the substantial justification inquiry of the EAJA and especially because our ruling does not depend upon an extension of *Corbin*, *Ibrahim* does not change the result.